2001 OK 117

**Tina Michele DANIEL,
Plaintiff/Appellant,**

v.

**Joe Brent DANIEL, Defendant/Appellee.**

No. 94,027.

Supreme Court of Oklahoma.

Dec. 18, 2001.

Rehearing Denied March 5, 2002.

Karen A. Pepper Mueller, Oklahoma City, OK, for Plaintiff/Appellant.

Lyn E. Ables, Madill, OK, Barry Kent Roberts, Norman, OK, for Defendant/Appellee.

KAUGER, J.

¶ 1 This cause involves a dispute over child custody. A divorced mother and father each petitioned for a change from joint custody to sole custody of their minor child. The trial court terminated joint custody and awarded the father sole custody. The Court of Civil

1. The trial court's ruling from the bench at the temporary hearing is reflected in the transcripts dated May 13, 1999, but is not otherwise memorialized in the record.

Appeals reversed the trial court and issued a directive rendering the opinion immediately enforceable. Two issues are presented on certiorari: 1) whether the Court of Civil Appeals may decree an opinion immediately enforceable; and 2) whether the trial court's order terminating joint custody and awarding sole custody of the child to the father was clearly against the weight of the evidence. We hold that: 1) the Court of Civil Appeals is without authority to decree an opinion immediately enforceable—an opinion of the Court of Civil Appeals is not effective or enforceable in the district court until the issuance of the mandate; and 2) the trial court's award of custody to the father is supported by the evidence. We also hold that each parent is responsible for their appeal-related attorney fees and other litigation expenses.

## FACTS

¶ 2 On March 24, 1999, the plaintiff/appellant, Tina Michele Daniel (mother/parent), filed for a divorce from the defendant/appellee, Joe Brent Daniel (father/parent). In the petition, the mother sought sole custody of their minor child with the father to have visitation rights. The father answered, seeking sole custody of the child. A temporary custody hearing was held and the trial court ordered custody of the child divided between the parents.[1]

¶ 3 At the trial on the merits, the father proposed joint custody with physical custody alternating every two weeks. The mother did not submit a custody plan. On July 2, 1999, after the trial on the merits was held, the trial court divided the personal property and debts, ordered the father to pay child support, and granted the divorce. The court awarded both parents joint custody. The child resided with the mother during the school year and with the father during the summer. Both parents were granted liberal visitation with the child during the time that the other parent had physical custody.[2]

2. The trial court directed the mother's attorney to the prepare the divorce decree, journalizing its ruling. On October 14, 1999, the mother filed a motion to settle the journal entry of the trial

¶4 On October 8, 1999, the father filed a motion to terminate joint custody and requested that he be awarded sole custody of the child. He asserted that: the mother had refused and neglected to follow, implement, or abide by the joint custody plan; the mother would not cooperate with or talk to the father regarding the child; and the mother quit her job and moved to Arkansas. The mother filed a counter-motion to modify, arguing that the father's uncooperative behavior fostered antagonism between the parties. She also sought to terminate joint custody, and requested that she be awarded sole custody of the child allowing the father extended visitation privileges.

¶5 A hearing on the motion to modify custody was held on November 16–17, 1999, and both parties presented evidence that the joint custody plan was not working. Each parent sought custody of the child. At the end of the hearing, the trial court, ruling from the bench, terminated joint custody, awarded the father sole custody of the child, and awarded the mother some visitation during the school year and extended visitation privileges in the summer months. On January 7, 2000, an order was entered, memorializing the trial court's ruling.

¶6 The mother appealed and the Court of Civil Appeals, in an unpublished opinion, reversed. It determined that a change in the physical custody arrangement should not have been ordered because no material change in circumstances was shown that would warrant modifying physical custody. On July 30, 2001, the father filed for rehearing in the Court of Civil Appeals.

¶7 The mother filed an emergency motion in this Court and in the Court of Civil Appeals on August 17, 2001, seeking to have the Court of Civil Appeals' opinion immediately enforceable because she had enrolled the child in school in Arkansas. We denied the application which was filed in this Court. On August 20, 2001, the mother filed another motion in the Court of Civil Appeals, seeking a writ of habeas corpus and a contempt citation. She insisted that the father should be directed to return the child to Arkansas so that the child could begin school.

¶8 On August 22, 2001, the Court of Civil Appeals denied the father's petition for rehearing. It also denied the mother's writ of habeas corpus and contempt requests, but directed the trial court to enforce the Court of Civil Appeals' July 10, 2001, unpublished opinion. The father, on August 30, 2001, filed an emergency application in this Court to stay the Court of Civil Appeals opinion until the mandate issues. On August 30, 2001, we granted the father's emergency application to stay the enforcement of the Court of Civil Appeals' opinion.[3] We granted certiorari on October 15, 2001.

I.

¶9 **THE COURT OF CIVIL APPEALS IS WITHOUT AUTHORITY TO DECREE AN OPINION IMMEDIATELY ENFORCEABLE. AN OPINION OF THE COURT OF CIVIL APPEALS IS NOT EFFECTIVE OR ENFORCEABLE IN THE DISTRICT COURT UNTIL THE ISSUANCE OF THE MANDATE.**

¶10 The mother concedes that an appellate opinion is not final until the mandate is issued, but she argues that nothing prevents an opinion of the Court of Civil Appeals from becoming effective or enforceable in the district court prior to issuance of the mandate.[4] The father insists that the

court's July 2, 1999, divorce ruling. A hearing regarding the motion was held on October 25, 1999, and the mother's attorney was directed to prepare the journal entry. The divorce decree memorializing the trial court's July 2, 1999, ruling was finally filed on November 17, 1999.

**3.** On August 31, 2001, the mother filed a second emergency motion for a writ of habeas corpus and motion for contempt citation in the Court of Civil Appeals. On September 17, 2001, the Court of Civil Appeals denied the motions, noting

that a petition for certiorari had been filed in this Court on September 7, 2001. On October 26, 2001, the mother filed an emergency motion for writ of habeas corpus and motion for contempt in this Court which was denied on November 19, 2001.

**4.** The mother relies on *12 O.S. Supp.1993 § 696.2* (E) and Rule 1.173, 12 O.S. Supp.1997, Ch. 15, App. 1, Oklahoma Supreme Court Rules, in support of her argument. Title 12 O.S. Supp.1997 § 696.2(E) provides in pertinent part:

Court of Civil Appeals is without authority or power to decree its opinion immediately effective or enforceable in the district court, and that a Court of Civil Appeals' opinion is not effective or enforceable unless and until mandate issues. We agree with the father.

■ ¶ 11 We recognized in *Matter of Chad S.*, 1978 OK 94, 580 P.2d 983, the long standing rule that while an appeal is pending in the appellate courts, the district court is without jurisdiction to make any order materially affecting the rights of the parties to that appeal. Any such order is void. An exception to this rule arises if the appeal is

> "A judgment, decree or appealable order, whether interlocutory or final, shall not be enforceable in whole or in part unless or until it is signed by the court and filed; **except that the adjudication of any issue shall be enforceable when pronounced by the court in the following actions: divorce; separate maintenance; annulment; post-decree matrimonial proceedings; paternity; custody,** . . . . The time for appeal shall not begin to run until a written judgment, decree or appealable order, prepared in conformance with Section 696.3 of this title, is filed with the court clerk, regardless of whether the judgment, decree, or appealable order is effective when pronounced or when it is filed." (Emphasis supplied.)

The mother insists that the statute is not specifically limited to the trial court and that appellate opinions which relate to custody matters become effective when rendered. Her argument is unpersuasive. The statute clearly, and expressly concerns the preparation, mailing and filing of judgments, decrees and appealable orders in the trial court and does not govern appellate opinions. Rule 1.173, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 provides:

> "In any case assigned to it, the division shall have the power to issue, in aid of its appellate jurisdiction, writs of habeas corpus, mandamus, quo warranto, certiorari and prohibition. The division shall have the power to enforce its process and the dignity of its proceedings by contempt."

This Rule allows the Court of Civil Appeals to issue limited orders *in aid of its appellate jurisdiction.* It does not provide, express or implied authority for the appellate court to supercede our rules.

5. Title *12 O.S. Supp.1999 § 1031.1* provides in pertinent part:

> "A. A court may correct, open, modify or vacate a judgment, decree or appealable order on its own initiative not later than thirty (30) days after the judgment, decree, or appealable order . . . has been filed with the court clerk.
> B. On motion of a party made not later than thirty (30) days after a judgment, decree, or

filed and the trial court exercises its jurisdiction under *12 O.S. Supp.1999 § 1031.1* within 30 days.[5] Then, the Supreme Court will stay the appeal pending final disposition of the cause in the trial court. Absent compliance with § 1031.1, the trial court loses its jurisdiction to make any order that pertains to the same issues on appeal.[6]

■■ ¶ 12 The Oklahoma Supreme Court Rules provide for the Chief Justice of the Supreme Court to issue the mandate after the Court of Civil Appeals renders an appellate opinion.[7] The mandate from the Su-

> appealable order . . . has been filed with the court clerk, the court may correct, open, modify, or vacate the judgment, decree or appealable order. . . . "

6. However, an appeal does not divest the trial court of the right to make provisional or temporary custody orders during pendency. *Fox v. Fox*, 1995 OK 87, ¶ 4, 904 P.2d 66; *Cochran v. Rambo*, 1971 OK 55, ¶ 6, 484 P.2d 500; *43 O.S. Supp.2000 § 112* (A)(3). If the trial court makes such an order, then it may be made part of the principal appeal. *Fox v. Fox*, supra; *Blair v. District Court of Oklahoma County*, 1979 OK 58, ¶ 9, 594 P.2d 367; Rule 1.37, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1.

7. Rule 1.16, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 provides in pertinent part:

> "In every appeal or petition to review any order of a district court or other tribunal, a mandate will be issued to the lower court or tribunal on order of the Chief Justice upon conclusion of the matter on appeal. The mandate may be issued seven (7) days after the filing of an order denying certiorari or rehearing in the Supreme Court or expiration of time to file a petition for writ of certiorari or petition for rehearing, and disposition of any timely filed post-decisional motion. No mandate is issued upon conclusion of original actions, questions certified by federal courts, bar disciplinary matters, original proceedings on initiative or referendum petitions. . . . "

Rule 1.183, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 provides:

> "If no rehearing be sought in a case assigned to the Court of Civil Appeals within the time prescribed by Rule 1.77 or if a petition for rehearing is denied and no certiorari is sought to the Supreme Court as provided by these rules, or if certiorari is denied by the Supreme Court, the Chief Justice will direct the Clerk of the Supreme Court to issue the mandate in accordance with rule 1.16 of these Rules."

preme Court is an order requiring the lower tribunal to comply with an appellate opinion,[8] and it carries with it the authority for the trial court to proceed.[9] When a cause is pending on appeal or on certiorari, a district court's exercise of judicial power with respect to issues which are tendered for review in the appellate forum is ineffectual if it occurs before the mandate has been transmitted to revest the trial court with subject matter jurisdiction.[10]

 ¶ 13 The mandate is issued for a Court of Civil Appeals opinion: if no rehearing is sought; if rehearing is denied and no certiorari is sought to the Supreme Court; or if certiorari is denied by the Supreme Court pursuant to Rules 1.16 and 1.83.[11] Any attempt to immediately enforce the opinion of the Court of Civil Appeals would result in an impermissible superceding of the Supreme Court's rules in violation of the Okla. Const. art 7 §§ 4 and 6.[12] Unlike the Supreme Court, the Court of Civil Appeals is not constitutionally created. Rather, it is a court of limited jurisdiction which exists as the result of permissive legislative authority.[13]

8. See, *Chronic Pain Associates, Inc. v. Bubenik,* 1994 OK 127, ¶ 12, 885 P.2d 1358 [When this Court exercises appellate jurisdiction and renders an opinion it issues an order requiring the lower tribunal to comply with the opinion. This order is referred to as a "mandate" or "writ of mandate", and is a type of writ of mandamus.]; *Aaron v. Morrow,* 1935 OK 911, ¶ 11, 174 Okla. 452, 50 P.2d 674 [After the mandate was sent to the trial court, the trial court alone had authority or jurisdiction to proceed by execution against the principal and sureties.]; *Harris v. Chambers,* 1926 OK 566, ¶ 12, 121 Okla. 75, 247 P. 695 [It is the duty of the district court to enforce the mandate of the Supreme Court issued upon affirmance of the judgment of the district court brought here on appeal.]; *Gilliland v. Bilby,* 1916 OK 340, ¶ 4, 53 Okla. 309, 156 P. 299 [The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate.].

9. *Id.*

10. *Goldman v. Goldman,* 1994 OK 111, ¶ 2, 883 P.2d 164.

11. Rule 1.16, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 7, supra; Rule 1.183, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 7, supra.

12. Okla. Const. art. XII, § 4 provides in pertinent part:

"... The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law. The Supreme Court, Court of Criminal Appeals in criminal matters and all other appellate courts shall have power to issue, hear and determine writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law and may exercise such other and further jurisdiction as may be conferred by statute ... The appellate and the original jurisdiction of the Supreme Court and all other appellate courts shall be invoked in the manner provided by law."

Okla. Const. art. VII, § 6 provides in pertinent part:

"Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, general administrative authority over all courts in this State ... is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules...."

Okla. Const. art. VII, § 1 provides in pertinent part:

"The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, ..."

*Dancy v. Owens,* 1927 OK 203, ¶ 9, 126 Okla. 37, 258 P. 879 [Supreme Court is the head of state's judicial system and other courts established by state law are inferior to Supreme Court.].

13. Okla. Const. art. VII. § 1, see note 12, supra; Title *20 O.S. Supp.1996 § 30.1* provides:

"There is hereby established an intermediate appellate court to be known as the Court of Civil Appeals of the State of Oklahoma which shall have the power to determine or otherwise dispose of any cases that are assigned to it by the Supreme Court. Its decisions, when final, shall neither be appealable to the Supreme Court nor be subject to reexamination by another division of the Court of Civil Appeals or by the Judges of that Court sitting en banc. The Court of Civil Appeals shall have jurisdiction to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, or any other process when this may be necessary in any case assigned to it by the Supreme Court. A decision of the Court of Civil Appeals may be reviewed by the Supreme Court if a majority of its Justices direct that a writ of certiorari be granted, and the Supreme Court may, by order, recall a case from the Court of Civil Appeals."

The Court of Civil Appeals is empowered only to the extent provided by statute, and by the rules and practices of the Supreme Court.[14]

¶ 14 There is no authority provided by statute or by the rules and practices of this Court which would allow the Court of Civil Appeals to supercede our rules. The Court of Civil Appeals lacked authority to decree an opinion immediately enforceable. A Court of Civil Appeals opinion is not effective or enforceable in the district court until the issuance of the mandate.

## II.

¶ 15 **THE TRIAL COURT'S AWARD OF CUSTODY TO THE FATHER IS SUPPORTED BY THE EVIDENCE.**

■■ ¶ 16 The mother argues that the trial court abused its discretion when it terminated joint custody and awarded sole custody to the father because: 1) there was no evidence that the child's best interests would be served by awarding sole custody to the father; and 2) the trial court's custody determination was mainly based on the fact that she had moved to Arkansas. The father insists that the trial court's award of custody is supported by the evidence. Neither parent argues that the other is unfit.

■■ ¶ 17 Ordinarily, a change of custody is justified when the case falls into one of two categories: 1) when circumstances of the parties have changed materially since the prior custody order; or 2) when material facts are revealed which were unknown, and could not have been ascertained with reasonable diligence when the final divorce decree was entered.[15] When a change in custody is requested based on a change of circumstances, the parent asking for modification must establish: 1) a permanent, substantial and material change in circumstances; 2) the change in circumstances must adversely affect the best interests of the child; and 3) the temporal, moral and mental welfare of the child would be better off if custody is changed to the other parent as requested.[16] Here, however, there is no change in custody from one parent to the other because both parties were awarded custody of the child pursuant to a court ordered joint custody arrangement.[17]

14. Okla. Const. art. XII, § 4, see note 12, supra; Okla. Const. Art. XII, § 6, see note 12, supra; Okla. Const. art. XII § 5 provides in pertinent part:

"... The jurisdiction, powers, duties and procedures of intermediate appellate courts shall be provided by rules of the Supreme Court until otherwise provided by statute. In the event of the creation of intermediate appellate courts, all appeals shall be made to the Supreme Court, which may, by rule, determine the method of assignment to, and recall from, the intermediate appellate courts until otherwise provided by statute. When the intermediate appellate courts acquire jurisdiction in any cause and make final disposition of the same, such disposition shall be final and there shall be no further right of appeal except for issuance of a writ of certiorari ordered by a majority of the Supreme Court which may modify or make such other changes in said decision as it deems proper. The Supreme Court and intermediate appellate court decisions shall be in such form as the Supreme Court shall specify by rule...."

Title *12 O.S.1991 § 74* provides:
"The Justices of the Supreme Court shall meet every two (2) years during the month of June at the capitol of the state and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the county courts, the superior courts, the district courts and all other courts of record."

Title *20 O.S. Supp.1996 § 30.4* provides in pertinent part:
"The Supreme Court shall prescribe by rules the procedure and practice in the Court of Civil Appeals, the procedure in bringing certiorari to the Court of Civil Appeals, and the scope of review to be afforded on certiorari to that Court. Subject to law and the rules of the Supreme Court, the Court of Civil Appeals may promulgate its own rules...."

15. *Carpenter v. Carpenter*, 1982 OK 38, ¶ 11, 645 P.2d 476; *Rice v. Rice*, 1979 OK 161, ¶ 8, 603 P.2d 1125; *Gibbons v. Gibbons*, 1968 OK 77, ¶ 12, 442 P.2d 482.

16. *Fox v. Fox*, 1995 OK 87, ¶ 7, 904 P.2d 66; *Rice v. Rice*, see note 15, supra; *Gibbons v. Gibbons*, see note 15, supra.

17. See, *Hornbeck v. Hornbeck*, 1985 OK 48, ¶ 11, 702 P.2d 42 [The trial court has the power to consider and order joint custody arrangement to serve the best interests of the child even though one parent has not agreed to abide by the plan.].

¶ 18 Title *43 O.S.1991 § 109* governs joint custody proceedings.[18] Section 109 defines joint custody as the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children.[19] Pursuant to § 109, after a joint custody plan is issued, the court can terminate joint custody upon the request of one or both of the parents or whenever the court determines that joint custody is not in the best interest of the child.[20]

¶ 19 The Court addressed the modification of joint custody in *Rice v. Rice*, 1979 OK 161, 603 P.2d 1125. The *Rice* father filed a motion to modify joint custody and sought sole custody of his child. The trial court, after considering testimony that the arrangement was not working well, and that it was not in the child's best interest terminated joint custody and awarded sole custody to the father. The *Rice* Court recognized that joint custody can be favorable and has been commonly employed in Oklahoma, and in other jurisdictions, to permit a child to be placed under the care and control of one parent during the school year and with the other parent during summer vacation. Nevertheless, the Court, recognizing that the best interest of the child is of paramount consideration, affirmed the trial court, holding that child custody should be modified, if for no other reason than to

eliminate the dual custody provisions of the original decree.

¶ 20 Clearly, *Rice*, teaches that a change in custody from joint to one parent differs from a change in custody from a one custodial parent to a non-custodial parent. Joint custody will not succeed without the cooperation of the parties. When it becomes apparent to the court that joint custody is not working and it is not serving the child's best interests, then a material and substantial change of circumstance has occurred and the joint custody arrangement must be vacated.[21] The mother argues that the trial court's termination of joint custody and change of physical custody during the school year was mainly based on the fact that she had moved to Arkansas.[22] However, in addition to the fact that she had moved out-of-state, it was undisputed that the joint custody arrangement was not working. The record contains ample evidence that the parties were unable to agree and cooperate with each other. Several instances of hostility and uncooperativeness between the parents were presented to the trial court. The trial court's determination that joint custody should be terminated is clearly supported by the evidence.

---

18. Title *43 O.S.1991 § 109* provides in pertinent part:

 "A. In awarding the custody of a minor unmarried child or in appointing a general guardian for said child, the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child.
 B. The court, pursuant to the provisions of subsection A of this section, may grant the care, custody, and control of a child to either parent or to the parents jointly . . ."

19. Title *43 O.S.1991 § 109* (B) provides in pertinent part:

 ". . . For the purposes of this section, the terms joint custody and joint care, custody, and control mean the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children."

20. Title *43 O.S.1991 § 109* (G)(1) provides:

 "The court may terminate a joint custody decree upon the request of one or both of the parents or whenever the court determines said decree is not in the best interests of the child."

21. See, *Rice v. Rice*, note 15, supra. Although Court of Civil Appeals opinions are not precedential unless approved for publication by the Supreme Court, see, *20 O.S. Supp.1996 § 30.5* and Rule 1.200(c)(2), Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App.1, the Court of Civil Appeals has reached similar results under similar facts in *Hoedebeck v. Hoedebeck*, 1997 OK CIV APP 69, 948 P.2d 1240; *Meigs v. Meigs*, 1996 OK CIV APP 76, 920 P.2d 1077; and *Newell v. Nash*, 1994 OK CIV APP 143, 889 P.2d 345.

22. The mother's reliance on *Holder v. Polanski*, 111 N.J. 344, 544 A.2d 852 is misplaced because it is distinguishable on its facts as it does not involve the termination of joint custody. We note that this Court recently, in *Kaiser v. Kaiser*, 2001 OK 30, 23 P.3d 278, reviewed a trial court's modification of custody which involved a mother who intended to relocate with the child out-of-state. Because Kaiser did not involve the modification of a joint custody plan, it is distinguishable from the present cause on its facts. Nevertheless, the record reflects that the trial court's termination of joint custody was not based solely on the fact that the mother moved to Arkansas.

¶ 21 When joint custody is terminated the trial court must proceed as if it is making an initial custody determination and award custody in accordance with the best interest of the child, as if no such joint custody decree had been made.[23] In a divorce action, the trial court is vested with discretion in awarding custody and visitation.[24] Nevertheless, the best interests of the child must be a paramount consideration of the trial court when determining custody and visitation.[25] On appeal, this Court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence.[26] The burden is upon the party appealing from the custody and visitation award to show that the trial court's decision is erroneous and contrary to the child's best interests.[27]

¶ 22 The mother insists that there was no evidence that the child's best interests would be served by awarding sole custody to the father and that the trial court abused its discretion by either not allowing and/or considering relevant evidence which would affect the best interest of the child.[28] However, an examination of the record discloses that evidence and testimony was presented on most of the evidence which the mother complains about. It appears that to the extent that any evidence was considered irrelevant by the trial court with regard to the father was likewise not considered with regard to the mother. Accordingly, we find no abuse of discretion warranting reversal. We have reviewed the transcripts and the record in this cause and cannot say the trial court's determination is contrary to the best interests of the child. There was conflicting testimony presented by both parents relating to how the child's interests would best be served. The trial court is better able to determine controversial evidence by its observation of the parties, the witnesses and their demeanor.[29] The judgment of the trial

23. Title 43 O.S.1991 § 109 (G)(2) provides:
"Upon termination of a joint custody decree, the court shall proceed and issue a modified decree for the care, custody, and control of the child as if no such joint custody decree had been made."

24. K.R. v. B.M.H., 1999 OK 40, ¶ 18, 982 P.2d 521; Kahre v. Kahre, 1995 OK 133, ¶ 19, 916 P.2d 1355; See, Conrad v. Conrad, 1968 OK 94, ¶ 4, 443 P.2d 110; Roemer v. Roemer, 1962 OK 166, ¶ 10, 373 P.2d 55.

25. Harmon v. Harmon, 1997 OK 91, ¶ 15, 943 P.2d 599; Mueggenborg v. Walling, 1992 OK 121, ¶ 9, 836 P.2d 112; Manhart v. Manhart, 1986 OK 12, ¶ 13, 725 P.2d 1234; Rice v. Rice, see note 15, supra at ¶ 10.

26. Manhart v. Manhart, see note 25, supra; Duncan v. Duncan, 1969 OK 7, ¶ 13, 449 P.2d 267; Waller v. Waller, 1968 OK 42, ¶ 17, 439 P.2d 952;

27. Manhart v. Manhart, see note 25, supra at ¶ 5 [Burden of showing that the judgment is against the clear weight of the evidence is on the appellant.]. See, K.R. v. B.M.H., note 24, supra. [One who alleges error in the trial court's determination on visitation must put forth the evidence upon which he or she relies and must affirmatively show how the determination is contrary to the best interest of the child]; Gorham v. Gorham, 1984 OK 90, ¶ 14, 692 P.2d 1375 [One who challenges the trial court's determination on custody, as to the best interests of the child, must put forth the evidence presented upon which he or she relies to establish the trial court's error

and he or she must affirmatively show how this evidence shows the trial court's decision to have been contrary to the child's best interests.].

28. When this Court vacates the opinion of the Court of Civil Appeals, we may address any issue properly raised in the appeal or remand the cause to the Court of Civil Appeals for that court to address such an issue. Hough v. Leonard, 1993 OK 112, ¶ 15, 867 P.2d 438; Rule 1.180, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1. Specifically, the mother argues that the trial court did not allow and/or consider relevant evidence of the father's failure to pay child support and failure to make mortgage payments on the marital residence, the father's home life, living arrangement, moving intentions, the father's efforts to alienate the mother, lack of cooperation in facilitating her visitation, and the father's alleged falsifying of enrollment applications for the child. The other also argues that the trial court abused its discretion in requiring her to enroll the child in day care or pre-school, even though she was available to stay at home with the child full-time. However, we need not address this argument because: 1) the mother did not enroll the child in day care or pre-school and no contempt citations were issued or sought; and 2) the requirement was not a part of the final modified custody order at issue in this appeal.

29. Manhart v. Manhart, see note 25, supra at ¶ 15; Perry v. Perry, 1965 OK 160, ¶ 5, 408 P.2d 285.

court is not against the clear weight of the evidence.

## III.

### ¶ 23 EACH PARENT IS RESPONSIBLE FOR APPEAL–RELATED ATTORNEY FEES.

¶ 24 On November 2, 2001, the father filed a motion for appeal-related attorney fees. On November 16, 2001, the wife filed a motion for appeal-related attorney fees and costs.[30] Appeal-related attorney fees are recoverable when there is statutory authority for the award of attorney fees in the trial court.[31] Title *43 O.S. Supp.1997 § 110* allows the trial court, upon granting a decree of divorce, to "require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances."[32] Counsel-fee allowances claimed in matrimonial disputes under § 110 do not depend on one's status as prevailing party, but may be granted only to that litigant who qualifies for the added benefit of judicial balancing of the equities.[33] Counsel fees may also be due when the appeal is found to be without merit.[34] This appeal does not appear frivolous nor lacking merit. In addition, based on our review of the record, there are no compelling or overriding equitable considerations in favor of either litigant. Consequently, we hold that each party shall bear its counsel-fees and other litigation expenses incurred in the appeal.[35]

## CONCLUSION

¶ 25 Pursuant to Rules 1.16 and 1.83, 12 O.S. Supp.1997, Ch. 15, App. 1, of the Oklahoma Supreme Court Rules, the Chief Justice of the Supreme Court issues the mandate after the Court of Civil Appeals renders an appellate opinion: if no rehearing is sought; if rehearing is denied and no certiorari is sought to the Supreme Court; or if certiorari is denied by the Supreme Court.[36] A Court of Civil Appeals opinion which is decreed immediately enforceable would supercede our mandate rules. There is no authority provided by statute or by the rules and practices of this Court which would allow the Court of Civil Appeals to do so. Consequently, the decree which attempted to render its opinion immediately enforceable is ineffectual.

¶ 26 When joint custody is terminated the trial court must proceed as if it were making an initial custody determination and award custody in accordance with the best interest of the child.[37] On appeal, this Court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary

---

**30.** The mother also seeks appeal-related costs. The father did not file a motion for appeal-related costs. Rather he requested in his brief "attorney fee of $3000.00, and appellee's costs as expended herein in this case as a reasonable and proper attorney fee." Rule 1.14, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1 provides in pertinent part:

"(a) Costs must be sought by a separately filed and labeled motion in the appellate court prior to mandate. The Clerk shall not tax as costs any expense unless the person claiming the same, prior to the issuance of a mandate in the cause, shall file with the Clerk a verified statement of taxable cost items showing that person has paid the same...."

**31.** First *Community Bank of Blanchard v. Hodges*, 1995 OK 124, ¶ 13, 907 P.2d 1047.

**32.** Title *43 O.S. Supp.1997 § 110* provides in pertinent part:

"... (C). Upon granting a decree of divorce or separate maintenance, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances...."

**33.** *Stork v. Stork*, 1995 OK 61, ¶ 18, 898 P.2d 732; *Thielenhaus v. Thielenhaus*, 1995 OK, 5, ¶ 19, 890 P.2d 925; *Phillips v. Phillips*, 1976 OK 165, ¶ 10, 556 P.2d 607.

**34.** Title *20 O.S.1991 § 15.1; TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 13, 829 P.2d 15.

**35.** See, *Pierce v. Pierce*, 2001 OK 97, ¶ 25, 39 P.3d 791; *Thielenhaus v. Thielenhaus*, note 33, supra; *Stork v. Stork*, note 33, supra.

**36.** Rule 1.16, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 7, supra; Rule 1.183, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1, see note 7, supra.

**37.** Title *43 O.S.1991 § 109* (G)(2) see note 23, supra.

to the weight of the evidence.[38] The record reflects that the trial court's determination is neither against the clear weight of the evidence nor does it appear contrary to the best interests of the child. Additionally, based on our review of the record, there are no compelling or overriding equitable considerations in favor of either litigant to pay appeal-related attorney fees and expenses on behalf of the other, consequently, each party shall bear its counsel-fees and other litigation expenses.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

¶ 27 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, BOUDREAU, WINCHESTER, JJ. concur.

¶ 28 OPALA, SUMMERS, JJ., concur in result to part I and concur in parts II and III.

---

**38.** *Manhart v. Manhart,* see note 25, supra; *Duncan v. Duncan,* see note 26, supra; *Waller v.* *Waller,* see note 26, supra.