2012 OK CIV APP 19

**Donald Joseph CABER, Jr., Petitioner/Appellant,**

v.

**Kendra L. DAHLE, Respondent/Appellee.**

No. 108,421.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 30, 2012.

Stephen C. Griffis, The Griffis Law Firm, PLLC, Oklahoma City, Oklahoma, for Petitioner/Appellant.

Christine N. Gronlund, Public Defender's Office of Oklahoma County, Oklahoma City, Oklahoma, Guardian ad Litem, for the Minor Child.

DEBORAH B. BARNES, Presiding Judge.

¶1 Petitioner/Appellant Donald Joseph Caber, Jr. (Father) appeals the trial court's order filed on May 19, 2010. The order awarded Father and Respondent/Appellee

Kendra L. Dahle (Mother) joint custody of their minor child (Child), denied Father's motion to relocate without prejudice to re-filing, and found Mother not guilty of indirect contempt but ordered her to pay an arrearage of $3,374.48. Father argues on appeal that the trial court erred (1) by awarding the parties joint custody because it is clearly against the weight of the evidence and not in the best interests of Child, (2) by denying his motion to relocate because no objection was filed within 30 days, and (3) by finding Mother not guilty of indirect contempt because such a finding is clearly against the weight of the evidence. Based on our review of the record on appeal and applicable law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother and Father were never married. Father filed a "Petition to Establish Paternity" in February of 2007, requesting a judicial determination that he is the biological father of Child.[1] In a "Temporary Order" filed in June of 2008,[2] the trial court established Father as the biological father of Child, and awarded Mother and Father joint custody with equal physical custody on a week-by-week basis.

¶3 A "Decree of Paternity" was filed in December of 2008, establishing Mother and Father as the biological parents of Child and finding that it is in the best interest of Child that joint custody be awarded to the parties, "with Father being the primary custodian with final decision making authority, subject to Mother's standard visitation."[3] Mother was ordered in the decree to pay Father child support in the amount of $201.44 per month. Regarding objections to a relocation request, the decree provided that "[i]f a party who receives notice of the intent of the other party to relocate the residence of a child does not file, within thirty (30) days of receipt of such notice, a proceeding seeking a

1. Record (R.), p. 1. Child was born in 2006.

2. R., p. 7.

3. R., p. 12.

temporary or permanent order to prevent the relocation, the relocation is authorized." [4]

¶ 4 In the "Joint Child Custody Plan" attached to the decree, the parties were directed to "reasonably confer with the other by the most reasonable means and appropriate method" on issues affecting the physical, mental and moral welfare and upbringing of Child. However, Father was granted "final decision making authority" in the event they were unable to reach an agreement. [5]

¶ 5 On May 8, 2009, Father filed an "Application For Emergency Temporary Order." Father asserted in his application that following Child's weekend visitation with Mother, Child had a "contusion" over her right eye. Father admitted that Mother had stated that this injury was the result of Child falling down steps on the way to the car. Father asserted that he subsequently "noticed more bruising to [Child's] face," as well as to other parts of her body. Father admitted that Mother had explained that, to the extent Child had any bruises, she may have received them the day before from playing with other children at the park. On the basis of these injuries, Father requested temporary sole custody of Child.

¶ 6 Following an ex parte hearing, the trial court granted Father's application in an "Emergency Custody Order," also filed on May 8, 2009. [6] The trial court granted Father temporary custody of Child, suspended Mother's visitation, and appointed a guardian ad litem.

¶ 7 On May 13, 2009, Father filed a "Motion to Modify Child Custody Plan" in which he argued there had been a permanent, material and substantial change of condition requiring the termination of joint custody and an award of sole custody to Father. In June of 2009, Father filed an application for an indirect contempt citation against Mother for, among other things, Mother's failure to pay child support. Finally, on October 14, 2009, Father filed a notice to relocate in which he stated that he "intends to relocate his residence and that of [Child] to Philadelphia, Pennsylvania" on or about November 22, 2009. [7]

¶ 8 In Mother's response to Father's motion to modify custody, filed in July of 2009, she argued it is in the best interest of Child that custody be modified and that sole custody be awarded to her. She argued that Father should only be awarded supervised visitation "due to drug use in [Father's] home." [8] Regarding Father's allegations of child abuse by Mother, she asserted that "[i]t has been proven and concluded by the Department of Human Services that [Child] was never abused but rather sustained a minor injury due to an accidental fall." [9]

¶ 9 A hearing on Father's motion to modify custody and application for contempt was held on January 11, 2010. [10] Mother testified at the hearing that, although she was ordered to pay $201.44 per month in child support, she had only paid a total of $50. However, Mother testified that she earns approximately $900 per month and that any additional money she has available goes toward her attorney fees and fees for supervised visitation with Child. [11]

¶ 10 Regarding injuries to Child while in her care, Mother testified that Child had also experienced injuries while in Father's care. She testified that all of the injuries that occurred while in her care were the result of common childhood accidents such as tripping on a sidewalk (contusion on Child's forehead), falling off a stool in the bathroom while brushing her teeth (injury to Child's lip), tripping while out shopping (stitches), and

4. R., pp. 14–15.

5. R., p. 17.

6. R., p. 36.

7. R., p. 54.

8. R., p. 47.

9. R., p. 46.

10. The appellate record contains a Narrative Statement of the January 2010 hearing signed by the trial judge on February 18, 2011, and filed on the same date.

11. R., p. 91. Mother testified that she pays $200 per month in rent, $100 per month in cell phone charges, and $180 per month to the government. She further testified she pays for a student loan and for gas and food. *Id.*

diaper rashes. Mother testified that she believed Father was "nit-picky" regarding her care of Child.

¶ 11 Mother and Father both testified that Mother had moved several times in 2009. Father testified that Mother was unable to maintain a telephone, consistent employment, or reliable transportation, and that she has had multiple roommates.

¶ 12 Father testified that his wife, with whom he was going through a divorce at the time of the hearing, had tested positive for marijuana during her pregnancy with their minor child. He also testified that they had an altercation while they were intoxicated that resulted in minor injuries to both of them. He testified that he had agreed to joint custody as to his minor child with his wife and that she was a "great mom" despite having tested positive for marijuana while pregnant with their child.

¶ 13 Christine N. Gronlund, the Guardian ad Litem (the GAL), testified that Father was not attempting to relocate for employment purposes and therefore could "perhaps" remain in Oklahoma.[12] Among other things, the GAL also testified that Mother now has her own residence, and she testified that if Father is allowed to relocate with Child, Mother's visitation with Child would be undermined.

¶ 14 In her report dated January 7, 2010, the GAL states in part as follows:

[Father] appears to take very good care of [Child] and doesn't pose any physical threat of harm to his daughter at this time. However, [Father] is very intolerant of [Mother's] position as [Child's] mother. He has engaged [i]n a pattern and practice of discrediting [Mother] by taking numerous photographs of his daughter[']s alleged injuries in the hands of [Mother].... All these injuries have been investigated by the department of human services and no abuse has been confirmed.[13]

The GAL also states in her report that she objects to Father's relocation "because of her concerns that [Father] will not honor [Moth-

er's] position as [Child's] mother. If allowed to relocate, [Child] may not see her mother again." [14]

¶ 15 Regarding Mother, the GAL states in her report as follows:

[Mother] appears to love her daughter and is concerned for her wellbeing. However, she has made an error in judgment in associating with David Webb.... [I]t is imperative that [Mother] remain disassociated from Mr. Webb as [the GAL] remains concerned about his true nature and his potential to harm [Child]. Other than Mr. Webb, [the GAL] has no concerns regarding [Mother's] ability to parent [Child].

¶ 16 The GAL recommends in her report "that the joint custody order ... remain in full force and effect," that "[Mother] remain away from David Webb[,] and that [Father's] request to relocate be denied."

¶ 17 In the order filed on May 19, 2010, the trial court awarded Father and Mother joint custody of Child "(With No Primary Custodian)," and awarded equal visitation on a "one week on and one week off" basis. The trial court found Mother not guilty of indirect contempt but ordered Mother to pay an arrearage of $3,374.48 at $75 a month beginning February 1, 2010. Finally, although Mother had failed to respond within 30 days to Father's notice to relocate, the trial court denied Father's motion to relocate without prejudice to re-filing. The trial court stated that it would not grant a motion to relocate "on [a] party's failure to respond timely with best interest [of Child] at issue. [Father] can re-file motion." From this order, Father appeals.

## STANDARD OF REVIEW

¶ 18 An appellate court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871. The burden is upon Father, as the appealing party, to demonstrate the trial court's deci-

12. R., p. 92.

13. R., p. 96.

14. R., p. 97.

sion was erroneous and contrary to Child's best interests. *Id.*

¶ 19 The issue of Father's request to relocate presents an issue of statutory construction, which is an issue of law to be reviewed *de novo.* *Lumber 2, Inc. v. Illinois Tool Works, Inc.,* 2011 OK 74, ¶ 8, 261 P.3d 1143, 1146.

¶ 20 "[I]n a contempt proceeding, questions of fact will not be reviewed." *Kerr v. Clary,* 2001 OK 90, ¶ 18, 37 P.3d 841, 845 (citation omitted). As a result, we review only questions of law. *In re the Marriage of Sager,* 2010 OK CIV APP 130, ¶ 2, 249 P.3d 91, 92.

## ANALYSIS

### I. Custody of Child

¶ 21 In his first proposition in his Brief–in–Chief, Father argues the trial court erred (1) by failing to terminate the joint custody arrangement, and (2) by failing to find that a permanent, substantial and material change of condition occurred directly affecting the welfare of Child to a substantial or material extent, and as a result of which it would appear that Child would be substantially better off in the sole custody of Father. Regarding the issue of joint custody, "[t]he [trial] court may terminate a joint custody decree upon the request of one or both of the parents or whenever the [trial] court determines said decree is not in the best interests of the child." 43 O.S.2011 § 109(G)(1). Section 109(G) does not require termination of joint custody merely because one or both parents request it, but provides that a trial court may terminate joint custody in such an event. *Kilpatrick' v. Kilpatrick,* 2008 OK CIV APP 94, ¶ 13, 198 P.3d 406, 409 (citing *Daniel* at ¶ 20, 42 P.3d at 870).

¶ 22 Joint custody requires parents who (1) have an ability to communicate with each other; (2) are mature enough to set aside their own differences; and (3) can work together and engage in joint discussions with each other and make joint decisions regarding the best interest of their child. *Foshee v. Foshee,* 2010 OK 85, ¶ 16, 247 P.3d 1162, 1169. "[N]otwithstanding the preference of the child[ ], or the physical location of the parents, joint custody is not proper where the parents are unable to cooperate." *Id.* at 1168–1169 (footnote omitted).

¶ 23 Father does not allege that he and Mother are unable or unwilling to cooperate and communicate with each other to make joint decisions regarding the best interest of Child, nor does he argue that such communication is not in the best interest of Child. Instead, Father supports his argument with evidence relevant to Mother's ability to properly care for Child, such as her frequent change of residence in 2009, and the injuries that occurred to Child while in Mother's care. Although relevant, for example, to the amount and type of visitation Mother should have with Child, this evidence carries little weight when determining whether Mother and Father are capable of communicating with each other regarding Child's best interest. We find that Father has failed to demonstrate that the trial court's decision to maintain joint custody is erroneous and contrary to Child's best interests, and we find the trial court did not err in this regard.

¶ 24 Father also argues the trial court erred by failing to find that a permanent, substantial and material change of condition occurred directly affecting the welfare of Child to a substantial or material extent, and as a result of which it would appear that Child would be substantially better off in the sole custody of Father.[15] In support, Father

---

15. An order fixing the custody of a minor child of the marriage of the parties to a divorce action, included in the final decree of divorce or in an order made subsequent thereto, is final on the conditions then existing, and may not be modified, with respect to the custody of the child, unless material facts are disclosed which were either unknown or could not have been ascertained with reasonable diligence at the time such order was made, or unless a showing is made of a permanent, material and substantial change in the circumstances or conditions of the parties, directly affecting the welfare of the child to a substantial or material extent, and as a result of which it would appear that the child would be substantially better off, with respect to its temporal welfare and its mental and moral welfare, if the requested change in custody were ordered by the court.

*Gibbons v. Gibbons,* 1968 OK 77, 442 P.2d 482, 482–483 (Syllabus by the Court).

points to the injuries to Child while in Mother's care, Mother's frequent change of residence, and Mother's failure to pay child support.

¶ 25 However, we find the trial court's implicit rejection of this argument in the May 2010 order does not constitute an abuse of discretion because (1) Mother's testimony at trial and the GAL's report show that child abuse has never been established and that Child's injuries were likely the result of ordinary accidents; (2) the GAL testified that Mother now has her own residence; (3) Mother's testimony indicates that her failure to pay child support was not willful but that, instead, she lacked adequate finances; and, (4) according to the GAL in her report, there are no concerns regarding Mother's ability to parent Child apart from Mother's past association with David Webb. Regarding the testimony presented at the January 2010 hearing, "the trial court heard the parties testify and observed their demeanor on the witness stand and is in [the] better position to evaluate their testimony than is this court from an examination of the record of the testimony on these items." *In the Matter of the Guardianship of C.D.A.*, 2009 OK 47, ¶ 10, 212 P.3d 1207, 1210 (quoting *Gibson v. Dorris*, 1963 OK 235, ¶ 3, 386 P.2d 186, 187). For these reasons, we find the trial court's implicit determination that no permanent, substantial and material change of condition has occurred directly affecting the welfare of Child to a substantial or material extent is not clearly against the weight of the evidence and that the trial court did not abuse its discretion by declining to award sole custody to Father.

## II. Relocation

¶ 26 Father argues that he should have been allowed to relocate with Child pursuant to 43 O.S.2011 § 112.3 because Mother did not timely object to his relocation notice. As detailed below, we reject Father's argument because he did not have the right to establish the principal residence of Child pursuant to § 112.3 at the time of his relocation request. Our resolution of this issue requires statutory construction, the cardinal rule of which is to ascertain and give effect to the intent of the Legislature. *Lumber 2, Inc. v. Illinois Tool Works, Inc.*, 2011 OK 74, ¶ 8, 261 P.3d 1143, 1146. The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole. *Id.* "When possible, different provisions must be construed together to effect a harmonious whole and give intelligent effect to each." *Rogers v. Quiktrip Corp.*, 2010 OK 3, ¶ 11, 230 P.3d 853, 859 (footnote omitted).

¶ 27 The December 2008 "Decree of Paternity" established joint custody. In May of 2009, Father filed an "Application For Emergency Temporary Order," and, following an ex parte hearing (at which neither Mother nor her counsel were present), the trial court, in an "Emergency Custody Order," granted Father *temporary* sole custody of Child, and suspended Mother's visitation. In the emergency custody order, Father was directed to file a motion to modify the underlying joint custody order within ten days. Within that time, Father filed a motion to modify custody in which he requested termination of the underlying joint custody plan and an award of sole custody of Child. In July of 2009, Mother filed a response to Father's motion to modify custody in which she argued it is in the best interest of Child that sole custody be awarded to her, and in which she further argued that Father should only be awarded supervised visitation. A hearing on Father's motion to modify and Mother's response was not held until January 11, 2010.

¶ 28 Father's notice to relocate was filed on October 14, 2009. The above procedural history clearly shows that at the time of Father's request to relocate, he had only temporary sole custody of Child, with the understanding the trial court intended to finally determine the custody issue on Father's motion to modify.

¶ 29 Title 43 O.S.2011 § 112.3(G)(1) provides:

> The person entitled to custody of a child may relocate the principal residence of a child after providing notice as provided by this section unless a parent entitled to notice files a proceeding seeking a temporary or permanent order to prevent the

relocation within thirty (30) days after receipt of the notice.

¶ 30 Title 43 O.S.2011 § 112.3(A)(3) defines "person entitled to custody of a child" as a person "so entitled by virtue of a court order or by an express agreement that is subject to court enforcement...." However, we do not read this definition so broadly as to permit any person with custodial rights to a child to change the principal residence of the child as that term is defined in § 112.3(A)(4). Section 112.3(G)(1) does not authorize relocation by a person with temporary or joint custody of that child; rather, it requires that the applicant be *"[t]he person* entitled to custody" of the child. This is consistent with the original relocation statute, now codified at § 112.2A: "[a] parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child." Consequently, a person with joint custody of a child or temporary custody is not a person entitled to "the" custody of the child within the meaning of the relocation statute.[16] Consistent with these provisions, § 112.3(B)(1), on which Father relies, only permits relocation by a person who has "the right" to establish the child's principal residence.

> Except as otherwise provided by this section, a person who has the right to establish the principal residence of the child shall notify every other person entitled to visitation with the child of a proposed relocation of the child's principal residence as required by this section.

Title 43 O.S.2011 § 112.3(B)(1).

¶ 31 Accordingly, neither the emergency custody order granting Father temporary sole custody of Child, nor the underlying joint custody plan, rendered Father "a person who has the right to establish the principal residence of the [C]hild" at the time of his request to relocate. Therefore, Father

was not entitled to unilaterally change the primary residence of Child pursuant to § 112.3, absent Mother's objection, and Father has not shown any error in this regard.[17]

### III.   Indirect Contempt

■■■■ ¶ 32 Father argues the trial court erred in finding Mother not guilty of indirect contempt for failure to pay child support. The GAL, in her answer brief, correctly points out the following:

> In order to be guilty of indirect contempt for failure to pay child support, it is not enough to demonstrate the mere failure to pay money. The offending party must be found to have willfully disobeyed the support order. *Davis v. Davis*, 1987 OK CIV APP 41, 739 P.2d 1029. The issue of willfulness is a factual determination based on the testimony and circumstances surrounding the failure to pay.[18]

"An order that provides for payment of child support, if willfully disobeyed, may be enforced by indirect civil contempt proceedings...." 43 O.S.2011 § 137(B)(2). The issue of willfulness is a fact question for the trial court. *In the Matter of the Adoption of V.A.J.*, 1983 OK 23, ¶ 8, 660 P.2d 139, 144; *In the Matter of the Guardianship of R.W.S.*, 1997 OK 148, ¶ 10, 951 P.2d 83, 86.

¶ 33 Because willfulness is a factual issue, it will not be reviewed on appeal. *Kerr v. Clary*, 2001 OK 90, ¶ 18, 37 P.3d 841, 845. The trial court was in the best position to determine whether Mother's failure to pay child support was willful. "[T]he trial court heard the parties testify and observed their demeanor on the witness stand and is in [the] better position to evaluate their testimony than is this court from an examination of the record of the testimony on these items." *In the Matter of the Guardianship of C.D.A.*, 2009 OK 47, ¶ 10, 212 P.3d 1207, 1210 (quoting *Gibson v. Dorris*, 1963 OK 235, ¶ 3, 386

---

**16.** Relocation of a child is governed by both § 112.2A and § 112.3. *Mahmoodjanloo v.Mahmoodjanloo*, 2007 OK 32, ¶ 2, 160 P.3d 951, 952.

**17.** Because we reach this conclusion, we are not required to address the merits of Father's argument that Mother's failure to object automatically entitled him to relocate when Father voluntarily invoked the district court's jurisdiction to

determine that issue by filing his motion to relocate and asking the district court's approval of his intended relocation. *Cf.,* section 112.3(G)(2) (a parent entitled to visitation may file a proceeding objecting to a proposed relocation.)

**18.** The GAL's answer brief, p. 13.

P.2d 186, 187). Therefore, we find the trial court did not err in finding Mother not guilty of indirect contempt.

### IV. Appeal-related Attorney Fees and Costs

¶ 34 In his Brief–in–Chief, Father requests appeal-related attorney fees and costs.[19] A motion for appeal-related attorney fees and costs made in the applicant's brief on appeal must be set forth in a separate portion that is specifically indentified, and it must state the statutory and decisional authority allowing the fee. Okla.Sup.Ct.R. 1.14(B), 12 O.S.2011, ch. 15, app. 1. We reject Father's request as not in compliance with Oklahoma Supreme Court Rule 1.14(B).

### V. Custody Order Entered During the Pendency of This Appeal

¶ 35 "[A]n appeal does not divest the trial court of the right to make provisional or temporary custody orders during pendency." *Daniel v. Daniel,* 2001 OK 117, 42 P.3d 863, n. 6 (citations omitted). *See also Fox v. Fox,* 1995 OK 87, ¶ 4, 904 P.2d 66, 68 (footnote omitted) ("We have long recognized the concurrent and coextensive jurisdiction of the district court to enter provisional custody orders during the pendency of an appeal."); Okla.Sup.Ct.R. 1.37(a), 12 O.S.2011, ch. 15, app. 1 ("After a petition-in-error has been filed, the trial court retains jurisdiction in the case for the following purposes: ... (2) To grant or modify orders in regard to custody, guardianship, support, and maintenance."). In a hand-written Court Minute filed on July 23, 2010, following the filing of the Petition in Error and during the pendency of this appeal, the trial court found as follows:

> (1) Child to remain in [Mother's] primary physical care and [Father] is to receive long distance visitation pursuant to schedule that consists of fall break[,] every other holiday, every spring break[,] and summer

except 2 weeks. [Father] gets odd yrs for Christmas. [Father] to provide Child to [Mother] by 6 pm at [left blank by the trial court.]

> (2) [Father] ordered to provide all documents, ID [and] information necessary to allow Mother to get medical care for [Child.]

> (3) Parties to keep each other apprised of their current address [and] phone # . [Mother] to provide Father w/3rd party [illegible].

> (4) No further review hearings unless further filing.

The physical custody and visitation arrangement set forth in the July 23, 2010 Court Minute is unaffected by this Opinion, and the status quo shall continue as most recently established by the trial court.

### CONCLUSION

¶ 36 Based on our review of the record on appeal and applicable law, we find the trial court did not err (1) by awarding the parties joint custody, (2) by denying Father's motion to relocate without prejudice, or (3) by finding Mother not guilty of indirect contempt. We deny Father's request for appeal-related attorney fees and costs, and we note that the physical custody and visitation arrangement set forth in the July 23, 2010 Court Minute is unaffected by this Opinion.

¶ 37 **AFFIRMED.**

FISCHER, C.J., and WISEMAN, J., concur.

---

19.  Father's Brief–in–Chief, p. 13.