2011 OK CIV APP 128

**Jeremy JOHNSON, Petitioner/Appellee,**

v.

**Amy WINGERT, Respondent/Appellant.**

**No. 108,540.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Oct. 27, 2011.

---

Lori L. Young, Young Law Office, Ponca City, OK, for Petitioner/Appellee.

Melissa F. Cornell, Robertson Cornell, Tulsa, OK, for Respondent/Appellant.

BAY MITCHELL, Presiding Judge.

¶1 In this modification of child custody proceeding, Respondent Amy Wingert (Mother) appeals from the trial court's order sustaining Petitioner Jeremy Johnson's (Father) Motion to Modify Custody. The trial court *sua sponte* terminated the parties' joint custody arrangement, finding joint custody was no longer viable and a permanent and material change of conditions had occurred since the entry of the original custody order. The trial court concluded it was in the best interest of SLJ to be placed in the primary custody of Father, with Mother to have visitation with SLJ pursuant to the Kay County Standard Long Distance Visitation Schedule.

¶2 Mother filed the present appeal arguing the original award of joint custody was void for failure to comply with 43 O.S. 2001 § 109, and the trial court erred in its application of the "change of conditions" test.[1,2]

---

1. When joint custody is terminated and primary custody is awarded to one parent, the trial court applies the "best interests of the child" test just as it would do in a first instance custody determination. 43 O.S Supp.2001 § 109(A) ("In awarding custody of a minor ... child ... the court shall consider what appears to be in the best interests of the physical and mental and moral welfare of the child."). On the other hand, when custody is modified from one parent to the other (without there having been joint custody) the trial court must find a permanent and material change of conditions and that the child would be substantially better off with the custody change.

2. Mother argues two additional points on appeal. First, Mother claims the trial court abused its discretion in determining it was in SLJ's best interests to award custody to Father. Second, Mother contends the trial court erred in failing to determine whether SLJ was of sufficient age to form an intelligent preference, and if so, whether SLJ's expression of preference was in her best interest. Because this Court concludes the trial court erred in finding a permanent and material change in conditions warranting a change in custody from Mother to Father, Mother's additional issues on appeal need not be addressed.

¶ 3 Mother and Father had a relationship of which one child, SLJ, was born on January 19, 2004. Mother had custody and control of SLJ from the time of the child's birth. In October 2004, the parties entered into, and the judge signed, an agreed *Temporary* Order Establishing Child Custody and Child Support wherein Mother had primary residential custody and Father had standard visitation. The temporary order recognized that "both parents are fit to have joint custody" of SLJ. The initial child support computation divided support 50/50 between Mother and Father.

¶ 4 The *final* Order Establishing Paternity, Visitation, etc. Regarding Minor Child was entered on August 1, 2005. The Order again recognized that "both parties are fit and proper to have joint custody" of SLJ with Mother being the primary custodial parent. At the time, Father was serving in the Armed Forces and was granted visitation with SLJ during periods when Father was on leave with forty-eight (48) hours notice to Mother. Child support was computed at seventy-one percent (71%) from Father and twenty-nine percent (29%) from Mother. In July 2007, the court entered a Stipulated Order Modifying Visitation and Child Support wherein it was noted Father was still serving in the military but no longer living in the barracks on base. Father was granted additional visitation with SLJ of no less than 3 months per year and his child support obligation was increased. This order also states that pursuant to the 2005 order, "the parties were awarded joint custody."

¶ 5 Father filed a Motion to Modify Custody in February 2010 requesting the parties continue to share joint custody of SLJ but primary physical custody of SLJ be changed to Father. In support of his Motion, Father alleged Mother failed to ensure SLJ attended school regularly and was tardy on multiple occasions. Father suggested Mother failed to enforce proper discipline with SLJ, resulting in disrespectful behavior by the child. Father contended Mother was reported as "sleeping all of the time" including one incident in which the paternal grandmother had Mother's apartment unlocked by the property manager when Mother failed to answer the door or multiple telephone calls. Father complained Mother regularly transported SLJ in the front seat of the car and failed to require the child to wear a seatbelt. Finally, Father claimed Mother did not allow reasonable attempts by Father to communicate with the child by telephone.

¶ 6 The hearing on Father's Motion to Modify was set on March 4, 2010, and proof of personal service on Mother was filed on February 24, 2010. Mother failed to appear for the hearing and the trial court found Mother in default. A journal entry memorializing this order was also filed on March 4, 2010. The Order Modifying Custody contained no mention of any prior joint custody order nor did the Order contain any findings of a material change in circumstances sufficient to warrant a change in custody. The Order merely stated: "That it is in the best interest of the child, [SLJ], that Petitioner be awarded sole custody of the child."

¶ 7 The trial court awarded Father sole custody of SLJ, terminated Father's child support obligation, and ordered that the paternal grandmother, J. Donna Jeffries (Jeffries), and the paternal uncle had the authority to obtain care and custody of SLJ and transport her to Father's home state of Virginia. By noon on March 4, 2010, SLJ was removed from school without notice to Mother and taken to Virginia.

¶ 8 Mother filed a Motion to Vacate on March 5, 2010 alleging Father on two separate occasions told Mother to disregard the Motion to Modify as he was telling his attorney not to proceed with the action. Mother further alleged Father told her she did not have to attend the hearing. Mother filed a Motion to Stay Proceedings and Enforcement of Order Modifying on March 11, 2010 pending the hearing on Mother's Motion to Vacate. Eventually, the trial court vacated the March 4 Order as a final order, but ruled it should be treated as a temporary order to remain in effect during the pendency of the action. The evidentiary hearing on Father's Motion to Modify was conducted over two days on April 30, 2010 and May 4, 2010.

¶ 9 Father testified extensively regarding the basis for filing his Motion to Modify. Father testified he began having concerns

about Mother's parenting decisions regarding discipline, the child's living conditions, SLJ's school attendance in Pre–Kindergarten and Kindergarten, and three (3) separate instances in which Mother failed to pick SLJ up from school.[3] Father decided to file his Motion to Modify the third and final time Mother failed to pick SLJ up from school. Father also indicated he received a phone call from a friend wherein he learned Mother on one occasion had transported SLJ in the car in an unsafe manner.[4]

¶ 10 Father described the extent of his support, visitation and communication with SLJ from 2004 until the change of custody in 2010. He reenlisted in the military in November 2004 before SLJ's first birthday and was stationed in Virginia. Due to his military service, which included a fifteen (15) month deployment to Iraq, he identified seven (7) instances in which he was able to exercise visitation with SLJ between November 2004 and August 2009. Father stated he thought he had additional visitation with SLJ during those years but could not recall any dates or other specifics. He testified he made attempts to communicate with SLJ via telephone from 2004 until the change in custody in 2010, which were hindered due to SLJ's age and attention span.

¶ 11 Mother testified that she had lived in the same apartment for seven (7) years and in the same apartment complex for ten (10) years. She admitted she occasionally allowed SLJ to ride in the front seat of her car, because she thought it was acceptable under the law. Mother stated she did not seek full-time employment from 2004 through 2009, because she was in school full-time and trying to raise her daughter. Mother obtained full-time employment after Father filed the Motion to Modify.

¶ 12 Mother discussed the three instances in which she failed to pick up SLJ from school on time. She stated the first time

SLJ was not picked up Mother was ill and had taken cold medicine causing her to fall asleep. The second occasion was a miscommunication between Mother and her friend, Regina McCloud (McCloud), resulting in Mother picking SLJ up late from school.[5] Regarding the third time SLJ was not picked up from school, Mother testified she sent multiple text messages to Jeffries asking Jeffries to pick up SLJ. Jeffries testified she did not receive text messages from Mother until after school had dismissed for the day and never responded to any of the text messages. Mother produced telephone records showing multiple text messages sent to Jeffries' telephone number, as well as a return text message from Jeffries prior to the end of the school day.

¶ 13 Mother offered the testimony of Crystal Lynn Reece (Reece), SLJ's teacher in Pre–Kindergarten and Kindergarten at Liberty Elementary in Ponca City, Oklahoma. Reece described SLJ as a very nice little girl. Reece never had any concerns about SLJ's manners or any difficulties with her conduct at school. Reece indicated SLJ was always respectful of her teachers and wanted to learn and participate in school. Reece stated SLJ progressed academically and met the benchmarks expected for her age group.

¶ 14 Reece discussed SLJ's absences with Mother and understood many of the absences in Pre–Kindergarten were due to ear problems and illnesses. Reece did not believe that SLJ's absences or tardies affected her academically. Reece did not have any concerns with SLJ during her Kindergarten year and reiterated SLJ was progressing normally. Reece rated Mother's involvement at the school as average and stated she saw Mother at the school a lot more than some other parents.

¶ 15 In announcing its ruling on Father's Motion to Modify, the trial court specifically noted the safety and welfare of SLJ was not

---

3. Father was informed of each incident by a telephone call from Jeffries with the first incident occurring in October 2009, the second in November 2009 and the third in February 2010. Jeffries also offered testimony about the October 2009 and February 2010 instances in which she picked up SLJ from school.

4. That friend was called as a witness and testified he witnessed SLJ riding in the front seat of Mother's car and she was not wearing a seat belt.

5. McCloud corroborated Mother's testimony regarding the incident and took responsibility for the miscommunication.

an issue. In discussing the existence of a joint custody arrangement, the trial court recognized: "But this is not a joint custody arrangement." The trial court then stated:

Counsel for Respondent argued that it truly wasn't a joint custody arrangement because it had not been completed by the parties submitting a joint custody plan. In a formal sense, they did not. In a formal sense, the Court did not adopt a plan, but they had a plan and that plan is no longer viable. And this Court will terminate that joint custody plan.

¶ 16 The trial court concluded a permanent and material substantial change of conditions had occurred, and set forth the factual basis for its determination as follows:

Certainly, these people are not the same people they were six years ago when the initial action was brought, the initial temporary custody order was entered, and finalized in '05.

At that time, the Petitioner was newly reenlisted in the armed forces, was single, living in a barracks. Respondent had elected to terminate employment and begin an educational endeavor to obtain further training. And that over these six years, the Petitioner has established a pattern of responsibility, has established a home, has established an admirable work record, is married, has increased his earnings substantially.

And upon the same time, during that same period, Respondent has really, for lack of a better word, really just continued to flounder. That even though eventually she was successful in graduating with a degree, which took several years, she has not actually become licensed and has not even actually, as I understand, attempted to become licensed, has not even sat for her boards since her graduation in '09. She still continues to live with minimal income, relying heavily on government subsidy and the support of others.

And so, it's that departure really from the two parties; one having established a record of responsibility and the other, a record of—of incompleteness or unresponsibility that—irresponsibility that has, really, I believe, is a material change of

condition since the time of the initial custody determinations.

The trial court sustained Father's Motion to Modify Custody and found it was in SLJ's best interests to be placed in the primary custody of Father. The trial court granted Mother standard visitation in accordance with Kay County's Standard Long Distance Visitation Schedule. Mother then instituted this present appeal.

¶ 17 The best interests of the child is a paramount consideration when the trial court determines custody and, on appeal, the reviewing Court "will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence." *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871.

¶ 18 The Oklahoma Supreme Court has long recognized: "[T]hat the relationship of parents to their children is a fundamental, constitutionally protected right." *Nelson v. Nelson*, 1998 OK 10, ¶ 16, 954 P.2d 1219, 1224. The Supreme Court has further declared: "A custody modification involves the health, safety, and well-being of a minor child. At the same time, it impacts 'the right of a parent to the care, custody, companionship and management of his or her child [which] is a fundamental right protected by the federal and state constitutions.'" *White v. White*, 2007 OK 86, ¶ 12, 173 P.3d 78, 80 (internal citation omitted).

¶ 19 Mother's primary argument on appeal complains the trial court applied the wrong standard in its custody determination. She argues the "joint" custody order entered in 2005 was void for failure to comply with 43 O.S.2001 § 109. She further claims the parties never exercised joint custody, and she was the *de facto* sole custodian of SLJ. Thus, she contends, with no valid joint custody order the trial court should have applied the "change of conditions" test to modify custody, rather than the "best interests" test. A review of the trial court's order, however, shows a finding that "there has been a permanent and material change of conditions." That order also finds that it is in the child's

best interest to be placed in the primary custody of Father.

¶ 20 Father relies on *Newell v. Nash,* 1994 OK CIV APP 143, 889 P.2d 345 [6] as instructive in this case. Father argues that, even though the joint custody arrangement was technically defective, the arrangement was not void because the parties had been operating under the plan for six (6) years. Father further claims the trial court did apply the standard set forth in *Gibbons v. Gibbons,* 1968 OK 77, 442 P.2d 482 and found a permanent and material change in circumstances warranting a change of custody to Father.

¶ 21 Joint custody is defined at 43 O.S.2001 § 109 as follows: "[T]he terms joint custody and joint care, custody, and control mean the sharing by parents in all or some of the aspects of physical and legal care, custody, and control of their children." Section 109(C) requires:

> If either or both parents have requested joint custody, said parents shall file with the court their plans for the exercise of joint care, custody, and control of their child. The parents of the child may submit a plan jointly, or either parent or both parents may submit separate plans. Any plan shall include but is not limited to provisions detailing the physical living arrangements for the child, child support obligations, medical and dental care for the child, school placement, and visitation rights.

43 O.S.2001 § 109(C).

¶ 22 In *Anderson v. Anderson,* 1990 OK CIV APP 23, 791 P.2d 116, this Court considered the circumstances in which joint custody was appropriate and specifically stated: "A cardinal criterion for an award of joint custody is the agreement of the parties and their mutual ability to co-operate in reaching shared decisions in matters affecting the child's welfare." *Id.,* ¶ 8, 791 P.2d at 117.

¶ 23 Similar to Mother's position herein, the appellant/mother in *Newell,* claimed the trial court improperly applied the "best interest of the child test" when terminating the joint custody plan and changing custody from mother to father. Appellant in *Newell* also argued the trial court should have required a showing of "a permanent, substantial and material change of condition" in accordance with *Gibbons.* Unlike the present case, in *Newell,* the parties submitted a joint custody plan to the trial court without attaching the requisite affidavits, but both parties signed the plan and the signatures were notarized. Another division of this Court concluded the joint custody plan in *Newell* substantially complied with 43 O.S.1991 § 109(C), and found: "Even if technically defective, the parties for two years treated the joint custody plan as precisely that." *Id.,* ¶ 6, 889 P.2d at 347.

¶ 24 It is undisputed the parties herein never complied with the provisions of § 109(C) and never filed a joint custody plan. The evidence and testimony presented illustrates the parties never exercised joint care, custody or control of SLJ. Instead, the record reveals Mother acted as the *de facto* sole custodian of SLJ and made all of the daily, mundane decisions regarding the physical living arrangements, medical and dental care, and school placement for the child. While Father made every effort to exercise visitation with SLJ and offered additional material support beyond the required child support, Father was not involved in any of the day to day decisions regarding the care and control of SLJ. Because much more is required, a mere statement in an order granting the parties "joint custody" does not make it so. As such, the trial court erred in finding the existence of a joint custody plan and in terminating the same. Because no joint custody existed, the trial court was required to follow the *Gibbons* criteria before granting a change in custody to Father.

¶ 25 The Oklahoma Supreme Court in *Daniel* reaffirmed the standards established in *Gibbons* regarding a change in custody from one parent to the other:

> When a change in custody is requested based on a change of circumstances, the parent asking for modification must establish: 1) a permanent, substantial and material change in circumstances; 2) the change in circumstances must *adversely*

6. Both parties relied on this case.

affect the best interests of the child; and 3) the temporal, moral and mental welfare of the child would be better off if custody is changed to the other parent as requested.

*Daniel,* ¶ 17, 42 P.3d at 869 (emphasis added).

¶ 26 Our Supreme Court previously considered whether a change in conditions involving only the non-custodial parent following the original custody order is sufficient to warrant a change in custody. *Pirrong v. Pirrong,* 1976 OK 36, 552 P.2d 383. In *Pirrong,* the Supreme Court held:

> The evidence is entirely lacking of the appellant's unfitness, and the court made no finding that she was an unfit person to retain custody of her children. The record reflects there had been no substantial changes in conditions bearing directly upon the temporal, mental and moral welfare of the children since the granting of the divorce. The recovery of the appellee is not sufficient reason to justify modification of custody. The mere fact that conditions have changed since the divorce of the parents is insufficient in itself to warrant a modification of custody. *Owens v. Owens,* 494 P.2d 318 (Okl.1972); *Walker v. Walker,* 460 P.2d 900 (Okl.1969).

*Id.,* ¶¶ 12–14, 552 P.2d at 385.

¶ 27 Although the trial court here indicated it found a permanent and material change in circumstances warranting a change in custody to Father, the change in conditions found by the court had nothing to do with Mother or SLJ, but rather involved *Father's* improved salary, living conditions and stability. The trial court specifically recognized Mother had not changed much of anything in her life, other than obtain a degree, since the original custody order in 2005.

¶ 28 Furthermore, the record reflects no evidence of a permanent, substantial and material change in circumstances directly and adversely *affecting the temporal and moral welfare of SLJ.* The evidence illustrated that

Mother lived in the same apartment throughout SLJ's life, SLJ was progressing well in school, and SLJ was a happy child with no discernable discipline issues. Although Mother had not improved her conditions as much as Father since the initial custody order, Mother provided a stable, happy, consistent home life for SLJ. Further, the evidence failed to prove that Mother's reliance on government subsidy and her family for financial support had any adverse impact on SLJ.

¶ 29 In summary, there was no joint custody plan to terminate (*sua sponte* or otherwise). Modification of custody, because it was requested based on a change of circumstances, required application of the test articulated in *Gibbons, Daniel* and numerous other reported decisions [7] by the appellate courts in this state.[8] The trial court did find that there had been a permanent and material change of conditions and that a change of primary custody to Father would be in the minor child's best interest. But, as discussed above, the evidence is lacking that would justify a modification on that basis. As in *Pirrong,* the evidence fails to show that Mother was unfit to retain custody of SLJ. In fact, the trial court recognized neither parent was "glaringly inadequate" or presented any safety concerns. The evidence also fails to show SLJ has been adversely affected by any change of circumstances and it fails to show SLJ's temporal, moral and mental welfare would be better off with the custody changed.

¶ 30 For these reasons, the trial court's order modifying custody was against the clear weight of the evidence. That decision is REVERSED and this case is REMANDED for a determination of child support, visitation and any additional issues necessitated hereby.

JOPLIN, J., and BUETTNER, J., concur.

---

**7.** (1) A permanent, substantial and material change in circumstances; (2) the change in circumstances must adversely affect the best interests of the child; and (3) the temporal, moral and mental welfare of the child would be better

off if custody is changed to the other parent as requested.

**8.** See ¶ 25 above.