OSCN Found Document:VARBEL v. VARBEL

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 VARBEL v. VARBEL
2014 OK CIV APP 25
321 P.3d 1012
Case Number: 110078
Decided: 02/14/2014
Mandate Issued: 03/14/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 25, 321 P.3d 1012

IN RE THE MARRIAGE OF AMANDA MARIA VARBEL, NOW PATTISON, AND 
BRICE DUANE VARBEL:

AMANDA MARIA VARBEL, NOW PATTISON, 
Petitioner/Appellee,
v.
BRICE DUANE VARBEL, 
Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF KAY COUNTY, OKLAHOMA
HONORABLE W. LEE STOUT, TRIAL JUDGE

AFFIRMED

Jack De McCarty, MCCARTY & RIGDON, Newkirk, Oklahoma, for 
Petitioner/Appellee,
Jarrod Heath Stevenson, STEVENSON LAW FIRM, P.L.L.C., 
Oklahoma City, Oklahoma, for Respondent/Appellant.


Wm. C. Hetherington, Jr., Vice-Chief Judge:
¶1 Brice Varbel (Father) appeals an order modifying previously entered terms 
of a Decree regarding custody and his visitation with JV (Child). Father alleges 
the trial court's custody modification is contrary to the best interest of Child 
and violates statute by expressing a preference for public schooling. At the 
outset, we must establish the nature of the matter before us.
¶2 Amanda Varbel (Mother) and Father wed on December 1, 2005, and Child was 
born in September of 2006. On June 4, 2007, Mother filed a Petition for 
Dissolution of Marriage and the marital union was dissolved in a Decree filed on 
March 12, 2008.[1] Mother was restored to her maiden name, child 
support calculations were made, and the parties' debts and property were 
divided. The Decree provides Mother is "to remain as the primary custodian of 
the minor child subject to [Father's] frequent and liberal visitation" pursuant 
to an attached Kay County Standard Visitation Schedule and, when Child reaches 
24 months of age, "a plan of shared parenting shall be initiated whereby each 
party shall enjoy alternating weeks of visitation with the minor child with the 
parties meeting in Stillwater, Oklahoma for the purpose of child exchange" and 
no extended summer visitation is to occur "so long as the shared custody plan is 
in place." In his Brief in Chief, Father states: "Both parties were found fit 
and awarded joint custody," and the parties appear to have treated the schedule 
of alternating visitation as a kind of joint custody.
¶3 The Decree contains provisions generally encouraging cooperation but does 
not contain provisions addressing any form of shared decision making. Although 
the above-quoted language refers to "shared parenting" and "shared custody," 
there is no joint custody plan as described in 43 O.S.Supp.2009 § 109[2] in the 
appellate record. Consequently, we conclude the record does not support an 
assertion the Decree established joint custody. Instead, it appears the Decree 
provides for primary custody of Child with Mother, and what began as standard 
visitation for Father became more extended visitation once Child attained age 2. 
This distinction is important because it affects both what the parties needed to 
demonstrate for a change in the Decree's original provisions and it affects our 
review.[3]
STANDARD OF REVIEW
¶4 Custody and visitation are matters of equity and are left to the sound 
discretion of the trial court. Kahre v. Kahre, 1995 OK 133, ¶ 19, 916 P.2d 1355, 1360. "Accordingly, 
unless we determine that the trial court's decision is clearly against the 
weight of the evidence so as to constitute an abuse of discretion, it will not 
be disturbed. Boatsman v. Boatsman, 1984 OK 74, 697 P.2d 516." Williamson v. 
Williamson, 2005 OK 6, ¶ 5, 
107 P.3d 589, 591. "An abuse of 
discretion occurs when a decision is based on an erroneous conclusion of law, or 
where there is no rational basis in evidence for the ruling." In the Matter 
of BTW, 2008 OK 80, ¶ 20, 195 P.3d 896, 908.
¶5 As stated Fox v. Fox, 1995 OK 87, ¶ 7, 904 P.2d 66, 69:

 
 The evidentiary requirements for a change of a permanent custody order 
 are well established. In Gibbons v. Gibbons, [1968 OK 77], 442 P.2d 482 (Okla.1968), we 
 held that the parent asking for modification must establish: 1) a permanent, 
 substantial and material change in circumstances; 2) the change in 
 circumstances must adversely affect the best interests of the child; and, 3) 
 the temporal, moral and mental welfare of the child would be better off if 
 custody is changed. Finding that the paramount consideration in awarding 
 custody on a motion to modify is what appears to be in the best interests of 
 the child in respect to its temporal, mental and moral welfare, and the 
 entire determination must be in light of what is in the child's best 
 interest, Gibbons was reaffirmed in David v. David, [1969 OK 164], 460 P.2d 116 (Okla.1969). In 
 David v. David, [1969 OK164, ¶ 8], 460 P.2d 116, 117 (Okla.1969), 
 we said, "The law is clear that in a hearing upon a motion to modify, the 
 burden is upon the applicant to show a substantial change in conditions 
 since the entry of the last order or decree which bears directly upon the 
 welfare and best interest of the child." And more recently in Gorham v. 
 Gorham, [1984 OK 90], 692 P.2d 1375 (Okla.1984), we 
 emphasized the necessity to show a direct and adverse effect on the child's 
 best interests.
¶6 "One who alleges error in the trial court's determination on visitation 
must put forth the evidence upon which he relies and must affirmatively show how 
the determination is contrary to the best interest of the child." K.R. v. 
B.M.H., 1999 OK 40, ¶ 18, 982 P.2d 521, 524. (Citation 
omitted.) "The trial court is entitled to choose which testimony to believe as 
the judge has the advantage over this Court in observing the behavior and 
demeanor of the witnesses." Mueggenborg v. Walling, 1992 OK 121, ¶ 7, 836 P.2d 112, 114.
FACTS
¶7 The parties' current dispute began over Child's schooling. Mother, a 
public school graduate, favors a public school education for Child. Father was 
home schooled to an eighth grade equivalency and then was advanced enough to 
enter public school at grade nine. He favors home schooling.
¶8 In April of 2011, Mother informed Father she wanted Child to attend a 
Ponca City Public School System Pre-K program. Father opposed the enrollment, 
told her he thought home schooling was best, and claimed it would cause his 
visitation to be limited to weekends. Mother testified he became "a little 
irate," she discontinued the conversation, and she told him, "Okay, well, 
obviously we can't come to an agreement, so I'll just file a motion and bring it 
to court." Father testified that when he tried to discuss public schooling 
versus home schooling with Mother, she told him she would take him to court and 
hung up on him. On the day after the April telephone conversation, Mother 
enrolled Child in the Pre-K program which was to begin on August 10, 2011.
¶9 On June 13, 2011, Mother filed a Motion to Modify Decree of Divorce, 
claiming a permanent, substantial and material change of circumstances affecting 
the best interest of Child required a change in custody and visitation, namely, 
Child's attainment of school age. In her motion, she seeks "full physical 
custody" of Child and asks that Father be awarded visitation according to the 
Kay County Standard Visitation Schedule provisions and in conjunction with 
Child's educational enrollment in the Ponca City public school system.
¶10 In his response to Mother's motion, Father also claims there had been a 
permanent, substantial, and material change of circumstances. He asserts Child 
would be "unquestionably better off" if placed in his "full legal custody." 
Father alleges Mother has "made every effort" to minimize his involvement in 
Child's life and claims "[t]here are no factors that would justify" Mother being 
"granted legal custody."[4]
¶11 In a "Counterclaim For Legal Custody" filed on July 25, 2011, Father 
alleges various reasons[5] Mother's custody of Child should be disfavored. 
Father argues Child was enrolled in a public school Pre-K program by Mother so 
as to minimize his involvement and that he and Child's paternal grandmother have 
initiated an education plan for Child's transition to school. He also cites 
efforts by Child's paternal grandparents (including their relocation near him 
and the alteration of his father's work participation) which allow them to 
provide care and educational assistance, the presence of other family members 
near his location, how child has only been cared for by family members (as 
opposed to day care) when with him, and his flexibility at work as factors 
favoring his own primary custody of Child. He contends Child has thrived with 
the current visitation schedule, he should have "full legal custody," and Mother 
should be granted liberal visitation.
¶12 On August 9, 2011, the trial court conducted a scheduling hearing and 
entered an interim order. A minute order for that date provides Father would 
have visitation with Child every other weekend from Friday at 6 p.m. until 
Sunday at 6 p.m.
¶13 Hearings on Mother's motion to modify began on August 30, 2011, and were 
completed on October 6, 2011. At completion of the first phase of hearing, 
following a request by Father's counsel and without any objection by Mother, the 
trial court appointed a guardian ad litem. Father's counsel then noted the 
parties were off record at the time of entry of the August 9, 2011 interim order 
and renewed an objection to the interim order, claiming it had allowed Mother to 
"unilaterally" change the visitation schedule. When stating the objection, 
counsel also claimed Father had offered a solution on August 9, 2011, which 
would allow Child to keep on track with home schooling which had been overruled 
by the trial court. At the close of the first phase of hearing, the trial court 
ordered Father to have visitation every weekend.
¶14 During hearings, the trial court heard testimony about the parties' 
handling of issues such as social interactions, activities, and nutrition/meal 
habits. The trial court also heard testimony about the parties' respective 
educations, employment, and work schedules. The trial court heard other evidence 
relative to the issues raised in the counter motions for modification.
¶15 Since age one, Child has attended day care when Mother was at work. After 
the marital dissolution, Mother lived with her parents until April of 2010, when 
they relocated to Louisiana due to her Father's job. For two years prior to that 
time Mother dated Ted Rains (Rains), and when her parents moved, she and Child 
began to live with Rains. She and Rains were not engaged or married. She takes 
Child to school in the morning. Rains acts as a step parent and sometimes 
transports Child for visitation exchanges in Stillwater, Oklahoma when Mother's 
work schedule conflicts with the visitation schedule. He also picks child up 
from day care after his work time when Mother's schedule prevents her from doing 
so. Mother testified Child receives Sooner Care coverage for medical insurance 
but had no other state assistance enrollment. Mother cited socialization as one 
factor in favor of public school attendance. She provided as exhibits several 
photographs of Child with other children, who Mother described some as "cousins, 
[Rains's] side of the family, nieces and nephews." One photograph label 
identifies the person with Child as "Grandma Lisa ([Rains's] Mom)."
¶16 Child's maternal grandmother, Debra S. Pattison (Pattison), testified she 
moved in April of 2010 because the facility where her husband worked closed. 
Since relocating, she had visited Mother and Child three to five times, most 
recently in May of 2011. She felt Rains was "a good guy," trusted him, and did 
not feel there was anything inappropriate about the way he related to Child. 
Pattison reported Mother and Rains started dating when Child was about 18 months 
to two years old. She did not know Child was being home schooled. From the time 
of the Decree in 2008 until the early part of 2010, Pattison stated Mother had 
used day care for Child only when she worked, and she sometimes had watched 
Child when Mother worked or if she had to run an errand. Mother then rested.
¶17 Father testified that either he or his mother care for Child when she is 
with him. Father previously trained for and obtained certification as a teacher 
for grades 6 through 12, but he allowed the certification to lapse due to his 
current employment. Father has had custody of another child, KV, who is about 
two and a half years older than Child, since KV was about two years old. KV, who 
has medical problems, is home schooled. Father describes KV and Child as "very 
close." Father cites his work flexibility as allowing him to participate in 
activities with Child and allowing him to promote Child's contact with 
Mother.
¶18 Father put on fairly extensive evidence of the type of materials used for 
the home schooling, which included materials from an accredited system, and 
privately accumulated resources such as computer learning programs, flash cards, 
books, and similar items. Father's mother, Elizabeth Varbel, a lawyer by 
training, home schooled Father and his sister. She and Father provide home 
schooling for KV and Child. She described various educational resources she uses 
for home schooling. Child was age three and a half when she began teaching 
letters and numbers. Father and his mother both testified they thought Child had 
regressed educationally and they felt the Pre-K program was below Child's skill 
level. Father's parents, his sister, and her husband and children live near him. 
KV's grandmother and her husband are active in both KV and Child's lives.
¶19 The Guardian Ad Litem, Chris Landes (GAL), filed a report on October 6, 
2011, the day hearing on Mother's motion reconvened. In his report he discounts, 
contradicts, or finds irrelevant several factors Father cited in his opposition 
to Mother's motion, finds both parties fit, states both have support systems to 
help with caring for Child, and has no concerns about their respective homes. 
GAL notes Child has thrived in the alternating visitation plan and recommends it 
be continued. The GAL also testified, and he was questioned about his 
observations and conclusions. GAL felt Child should be placed in Father's 
primary care if the alternating visitation schedule was not used and the 
placement would be in Child's best interest. He cited Father's ability to 
provide additional visitation as situations arose.
¶20 Following hearing, the trial court modified the Decree[6] by placing primary custody 
with Mother and providing for visitation by Father every weekend from 6 p.m. on 
Friday until 6 p.m. on Sunday, any Federal or State Monday holidays are 
considered part of the weekend with a 6 p.m. Tuesday return time, and the entire 
summer vacation excepting two weeks in June and two weeks in July. Mother is 
ordered to provide Father at least thirty days' notice of which two weeks she 
has chosen and she may not choose consecutive two week periods such as last two 
weeks in June and the first two in July. An attached Holiday Visitation Schedule 
governs all other visitation[7] and sets up a summer visitation schedule if notice 
is not given timely.
THE APPEAL
¶21 Father appeals, arguing the trial court's modification of the Decree 
fails to make a determination in Child's best interest and it expresses a bias 
or preference in favor of public schooling. He alleges Mother unilaterally 
discontinued the system of alternating weeks of visitation in April of 2011 by 
enrolling Child in a Pre-K program. The record does not support that assertion. 
According to the evidence adduced at the hearings, Child's first day of 
attendance at the Pre-K program was August 10, 2011, that is the day 
after the trial court entered the interim order changing Father's visitation to 
weekends and twenty days before hearings began on the Mother and Father's 
respective motions.
¶22 Father also complained of a period when Mother did not keep to the 
alternating week schedule due to Child's infection with head lice and the 
failure of the first attempted treatments for the condition. The dates this 
occurred were not elicited in the testimony.
¶23 Section 112(D)(1) of Title 43 provides that "[e]xcept for good cause 
shown, a pattern of failure to allow court-ordered visitation may be determined 
to be contrary to the best interests of the child and as such may be grounds for 
modification of the child custody order." On its face, this statute recognizes a 
pattern of conduct may serve as the basis for a custody modification, and 
it also contains an exception allowing good cause to be shown for interrupting 
visitation. "'Good cause' is determined by application of equitable principles." 
King v. King, 2005 OK 4, 
¶ 18, 107 P.3d 570, 578. The 
record does not demonstrate a pattern of denial of visitation and good cause was 
shown for the single episode of temporary denial of visitation.
¶24 Both parties cite Child's attainment of school age as a change of 
condition. However, the mere fact there has been a change of condition since 
entry of the last order, standing alone, is not sufficient for a change 
of custody because, as cases have long recognized, the change also must 
adversely affect a child's temporal, moral and mental welfare so as to 
necessitate the trial court's alteration of the current custodial placement. 
See, e.g., Daniel v. Daniel, 2001 OK 117, 42 P.3d 863; Fox v. Fox, 1995 OK 87, 904 P.2d 66; Pirrong v. 
Pirrong, 1976 OK 36, 552 P.2d 383; Owens v. Owens, 
1972 OK 26, 494 P.2d 318; Gibbons v. 
Gibbons, 1968 OK 77, 442 P.2d 482; Johnson v. 
Wingert, 2011 OK CIV APP 
128, 268 P.3d 145. The 
record does not support a conclusion Child has suffered an adverse effect 
necessitating a change in the current custodial placement.
¶25 Father contends the trial court exhibited an impermissible preference for 
public schooling over home schooling. His mother testified she had purchased the 
Calvert home schooling system in June of 2011, Child had begun to use it, and if 
the system, which was one approved by the State of Oklahoma, was used for two 
years Child might have been allowed to skip a grade upon changing to public 
school if she was ahead of her cohort in the public school. In other words, both 
Father and his mother considered Child as capable of excelling. However, the 
trial court also heard evidence that the public school system was considering 
changes which would result in children attaining an even later age before 
entering school, i.e., making a policy decision resulting in more 
maturity at each subsequent grade level. The record shows the trial court 
considered all the evidence concerning both educational approaches. As noted 
above, primary custody in the Decree was placed with Mother. Cooperative 
decision-making is a worthy and important goal, but as Child's primary 
custodian, participation in the Pre-K program is within the purview of her 
control. As Mother points out, Father testified he had planned to home school 
Child only until first grade, only a short time beyond pre-school. However, 
Father did qualify his plan as an "initial" one, subject to revision. Even so, 
the selection of public school for early education by Mother is not demonstrated 
to be adverse to Child's interest so as to qualify as a change of condition. 
Father's job, which he has held since 2007, i.e., before the marital 
dissolution, may allow him more flexibility to facilitate visitation, but that 
factor alone is insufficient to justify a change of custody under the 
circumstances and it is not a change in the conditions post-dating the 
Decree.
¶26 Lastly, Father raises an issue regarding alleged "violence" by Mother 
towards KV, presumably occurring while the parties were married. The trial court 
stopped the line of inquiry and refused to allow exploration of facts predating 
the 2008 marital dissolution. As to "Rulings on Evidence," the Legislature has 
provided, in 12 O.S.2011 § 2104 
that:

 
 A. Error may not be predicated upon a ruling which admits or excludes 
 evidence unless a substantial right of a party is affected, 
 and:
* * * * *

 
 2. If the ruling is one excluding evidence, the substance of the evidence 
 was made known to the judge by offer or was apparent from the context within 
 which questions were asked.
Father did not make an offer of proof regarding excluded evidence of such 
behavior by Mother nor did he attempt to elicit any evidence of more recent 
events after the period excluded. We will not address an issue not properly 
preserved. See Irwin v. Irwin, 1966 OK 146, 416 P.2d 853.
CONCLUSION
¶27 Father has not presented clear and convincing evidence of a change of 
condition such that the order of the trial court is contrary to the weight of 
the evidence and results in an abuse of discretion. The order is 
AFFIRMED.

JOPLIN, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] 
Contrary to the claim in Father's statement of facts in his Brief in Chief, 
paragraph 3 of the Decree provides for payment of support. However, support was 
not an issue raised at hearing and it is not an issue on appeal.

[2] In 
particular, the appellate record lacks a joint custody plan meeting the 
requirements of 43 O.S.Supp.2001 § 
109 which provide:
C. If either or both parents have requested joint custody, said parents shall 
file with the court their plans for the exercise of joint care, custody, and 
control of their child. The parents of the child may submit a plan jointly, or 
either parent or both parents may submit separate plans. Any plan shall include 
but is not limited to provisions detailing the physical living arrangements for 
the child, child support obligations, medical and dental care for the child, 
school placement, and visitation rights. A plan shall be accompanied by an 
affidavit signed by each parent stating that said parent agrees to the plan and 
will abide by its terms. The plan and affidavit shall be filed with the petition 
for a divorce or legal separation or after said petition is filed.
D. The court shall issue a final plan for the exercise of joint care, 
custody, and control of the child or children, based upon the plan submitted by 
the parents, separate or jointly, with appropriate changes deemed by the court 
to be in the best interests of the child. The court also may reject a request 
for joint custody and proceed as if the request for joint custody had not been 
made.

[3] A 
modification of initial placement of primary custody with one parent requires a 
showing of a permanent and material change of conditions and that the child 
would be substantially better off with the change. When joint custody is ended, 
the trial court applies the "best interests of the child" test pursuant to 43 O.S.Supp.2009 § 109(A), just as 
it would do in a first instance custody determination. Daniel v. Daniel, 
2001 OK 117, ¶ 21, 42 P.3d 863, 871.

[4] As 
described above, in making their claims and assertions, both parties mistakenly 
characterize the custody order as a joint custody order.

[5] Among 
the reasons he cites are Mother's cohabitation with a man, alleged exposure to 
tobacco smoke, and her lack of any immediate family in the area.

[6] The 
trial court entered other findings, including those regarding child support and 
expenses for such things as child care and health costs, none of which are at 
issue in this appeal.

[7] The 
schedule is tied to school schedules for Child and KV, her older 
half-sibling.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2011 OK CIV APP 128, 268 P.3d 145, JOHNSON v. WINGERT
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1992 OK 121, 836 P.2d 112, 63 OBJ 2315, Mueggenborg v. Walling
Discussed 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIEL
Discussed at Length 1966 OK 146, 416 P.2d 853, IRWIN v. IRWIN
Discussed 1968 OK 77, 442 P.2d 482, GIBBONS v. GIBBONS
Discussed at Length 1969 OK 164, 460 P.2d 116, DAVID v. DAVID
Discussed at Length 1995 OK 87, 904 P.2d 66, 66 OBJ 2411, Fox v. Fox
Discussed at Length 1972 OK 26, 494 P.2d 318, OWENS v. OWENS
Discussed 1995 OK 133, 916 P.2d 1355, 66 OBJ 3771, Kahre v. Kahre
Discussed 2005 OK 4, 107 P.3d 570, KING v. KING
Discussed 2005 OK 6, 107 P.3d 589, WILLIAMSON v. WILLIAMSON
Discussed 2008 OK 80, 195 P.3d 896, IN THE MATTER OF BTW
Discussed 1976 OK 36, 552 P.2d 383, PIRRONG v. PIRRONG
Discussed 1999 OK 40, 982 P.2d 521, 70 OBJ 1547, K.R. v. B.M.H.
Discussed 1984 OK 74, 697 P.2d 516, Boatsman v. Boatsman
Discussed 1984 OK 90, 692 P.2d 1375, Gorham v. Gorham
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 2104, Rulings on Evidence
Cited
Title 43. Marriage Cite
Name
Level 43 O.S. 109, Best Interest of Child Considered in Awarding Custody or Appointing Guardian - Joint Custody - Plan - Arbitration
Discussed at Length